**Albert Huston FREELS,
Petitioner–Appellant,**

v.

**Norm F. HILLS, Supt.,
Respondent–Appellee.**

No. 87–3016.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 21, 1987.

Decided April 6, 1988.

Rehearing and Rehearing En Banc
Denied May 23, 1988.

Gregory L. Ayers (argued), Ohio Public Defender Comm., Columbus, Ohio, for petitioner-appellant.

James A. Carr, Asst. Atty. Gen., John J. Gideon, Asst. Atty. Gen. (argued), Columbus, Ohio, for respondent-appellee.

Before ENGEL, Chief Judge,[*] and MERRITT and RYAN, Circuit Judges.

ENGEL, Chief Judge.

This appeal from the denial of a writ of habeas corpus requires us to determine, for the first time in this circuit at least, whether failure by defendant's appellate counsel strictly to conform to the requirements for filing an appellate brief set forth in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), must be deemed presumptively prejudicial or whether such conduct is to be measured by the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

The facts are relatively simple. On July 14, 1983, Freels pleaded no contest to a charge of felonious assault in the Hamilton County Court of Common Pleas. He was found guilty and sentenced to a term of two to fifteen years. Freels chose to appeal his conviction and new counsel was appointed to represent him. Counsel filed a four page brief in which he reviewed the

[*] The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

procedural history of the case, concluded that the trial court had committed no errors, and asked the appellate court to review the record to ensure that he did not miss anything. In contrast, Freels submitted a pro se brief raising five assignments of error: (1) The trial court ignored a psychiatric evaluation in the pre-sentence investigation report; (2) the trial court did not sufficiently warn appellant of the gravity of a plea change; (3) appellant was erroneously charged with attempting to cause "serious" physical harm; (4) appellant's employer was legally responsible for the actions of appellant, the employee; and (5) the trial court failed to ask appellant at the plea hearing if he was satisfied with defense counsel. Despite his objections, Freels' conviction was affirmed on April 4, 1984 by the First Appellate District Court, Hamilton County, which held that "there were reasonable grounds for this appeal" and thus imposed no penalty against Freels. At the same time it concluded "that the record of the proceeding below contains no demonstrative evidence of error prejudicial to appellant's rights." Freels completed the exhaustion of his state court remedies when the Ohio Supreme Court denied his motion for leave to appeal.

On February 24, 1986, Freels filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio. He claimed that he had been denied the effective assistance of appellate counsel in violation of the Due Process Clause of the fourteenth amendment. More specifically, Freels claimed that his counsel was ineffective in failing to present the argument that Ohio Criminal Rule 11(C)(2)(a) had been violated.[1] The record shows that while the trial judge did cover most of the requirements with Freels, he failed specifically to discuss the elements of felonious assault with defendant as required by the rule.

On review of Freels' petition the district judge applied the deficient counsel standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), to Freels' case and denied the writ. Under that standard [2] the district court found that since Freels had made no showing that he had been prejudiced by his counsel's alleged inadequate conduct, there was no need to decide whether counsel's conduct was, in fact, deficient. Freels appealed the district court judgment.

Because all states now have well established statutory procedures for direct appeals of criminal conviction, it is not difficult to forget that a state is not required by the federal Constitution to provide appellate courts or a right to appellate review at all. Indeed, "whether an appeal should be allowed, and if so, under what circumstances or on what conditions, are matters for each State to determine for itself." *McKane v. Durston,* 153 U.S. 684, 688, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894). Once, however, a state does grant appellate review, the Constitution steps in to assure that the right so conferred by the state is conferred without discrimination:

1. Rule II(C)(2)(a) states:
   (C) Pleas of guilty and no contest in felony cases.
   ....
   (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
   (a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

2. The standard set forth in *Strickland* is:
   A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
   466 U.S. at 687, 104 S.Ct. at 2064.

But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations.

All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside.... There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.

*Griffin v. Illinois*, 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–91, 100 L.Ed. 891 (1956) (footnotes and citations omitted).

The Court has also held that the sixth amendment right to trial counsel applies to the states through the fourteenth amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The sixth amendment guarantee was further extended in *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed. 2d 333 (1980), to include not only the right to counsel, but the right to effective assistance of counsel. Most recently, in *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed. 2d 821 (1985), the Court merged the *Cuyler* line of cases with the right to counsel on first appeal set forth in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and held that the sixth amendment guarantees a criminal appellant effective assistance of counsel on his first appeal as of right. The Court in *Evitts* traced the history of the continuing concerns for the right to effective assistance:

Just as a transcript may by rule or custom be a prerequisite to appellate review, the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits. See *Griffin, supra,* [351 U.S.] at 20 [76 S.Ct. at 591]. Therefore, *Douglas v. California, supra,* recognized that the principles of *Griffin* required a State that afforded a right of appeal to make that appeal more than a "meaningless ritual" by supplying an indigent appellant in a criminal case with an attorney. 372 U.S. at 358 [83 S.Ct. at 817]. This right to counsel is limited to the first appeal as of right, see *Ross v. Moffitt,* 417 U.S. 600 [94 S.Ct. 2437, 41 L.Ed.2d 341] (1974), and the attorney need not advance *every* argument, regardless of merit, urged by the appellant, see *Jones v. Barnes,* 463 U.S. 745 [103 S.Ct. 3308, 77 L.Ed.2d 987] (1983). But the attorney must be available to assist in preparing and submitting a brief to the appellate court, *Swenson v. Bosler,* 386 U.S. 258 [87 S.Ct. 996, 18 L.Ed.2d 33] (1967) (*per curiam*), and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim. See *Anders v. California,* 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967); see also *Entsminger v. Iowa,* 386 U.S. 748 [87 S.Ct. 1402, 18 L.Ed.2d 501] (1967).

469 U.S. at 393–94, 105 S.Ct. at 834–35.

In *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Supreme Court considered the dilemma facing a court-appointed appellate counsel required to prosecute a first appeal from a criminal conviction when his own conscientious examination of the record revealed no merit in the appeal. To reconcile the right of an indigent defendant to counsel who will vigorously and fairly advocate his rights on appeal with the ethical strictures upon counsel generally to advance on behalf of a client only those issues which such counsel honestly believes fairly debatable under the law, the Court, speaking through Justice Clark, established a procedure which it expected would be compatible

with both interests and would avoid the unseemly demand that appellate counsel pursue frivolous and non-meritorious claims:

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Id.* at 744, 87 S.Ct. at 1400 (footnote omitted).[3]

While the Supreme Court in *Anders* did set forth guidelines for appellate counsel when that counsel believes there is no merit to defendant's appeal, the Court did not provide guidance for determining what degree of non-compliance with *Anders* requirements might necessitate reversal. More insight into the matter was provided in a subsequent case, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There the Court held that an error by counsel, even if unreasonable, generally does not warrant setting aside the judgment of the criminal proceeding if the error has no effect on the judgment. Prejudice is only presumed if defendant is denied the actual or constructive assistance of counsel or if counsel has a conflict of interest. In all other cases, counsel is simply considered "deficient" and defendant must show both that counsel's deficiencies fall outside the "wide range of professionally competent assistance," *and* that absent the attorney's errors, the factfinder would have reasonable doubt respecting guilt of the defendant. *Id.* at 690, 104 S.Ct. at 2066. In fact, in determining whether the judgment must be set aside, the standards in *Strickland* are not unlike those set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman* the Supreme Court recognized that although certain errors of constitutional dimension may intrude into criminal trials, they do not invariably affect the result. The Court concluded that in most cases these errors may properly be ignored if it can be determined that they are "harmless beyond a reasonable doubt" and do not affect the outcome of the case. *Id.* at 22, 87 S.Ct. at 827.

Both *Chapman* and *Strickland* note that certain types of error can never be harmless when they involve the outright deprivation or denial of the right to counsel

---

**3.** Sixth Circuit Rule 12(d)(3) governs the filing of *Anders* briefs in this circuit.

  **(d) Withdrawal of Appellate Counsel.** A motion to withdraw as counsel on appeal in a criminal case must state the reasons for such relief and be accompanied by one of the following:

  ....

  (3) A brief following the procedure described in *Anders v. California,* 386 U.S. 738,

87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel shall serve a copy of the brief and motion on the defendant and advise the defendant that the defendant has twenty-one (21) days from the date of service in which to file a brief in support of reversal of the conviction. Such a motion must be accompanied by proof of service on the defendant.

where otherwise constitutionally mandated. Thus, while *Chapman* recognizes that certain trial errors, though working constitutional harm, can nonetheless be held to be harmless if the court is able to declare its belief that such error was "harmless beyond a reasonable doubt," 386 U.S. at 21–24, 87 S.Ct. at 826–28. *Chapman* also acknowledges, albeit somewhat cryptically, that "our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Id.* at 23, 87 S.Ct. at 827–28 (citing *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963)). *See also Chapman,* 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8 (citing *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge)). The Court reached a similar conclusion in *Strickland.* Although the Supreme Court held that not all unreasonable conduct amounting to incompetence of counsel inevitably commands reversal, it nonetheless recognized that:

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States v. Cronic, ante* [466 U.S] at 659, and n. 25 [104 S.Ct. at 2047, and n. 25]. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. *Ante,* at 658 [104 S.Ct. at 2046]. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

*Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

■ Upon review of the record here it is altogether evident that the mandates of *Anders* have not been followed. While Freels' court-appointed appellate counsel represented to the court that he had reviewed the transcript and found no error, we do not know from the record before us whether he consulted with or sought the advice of Freels himself or even whether he gave any notice of his intention to file such a brief. Certainly the "brief" submitted by counsel did not refer to any of the claims of error alleged by Freels in the latter's own brief, nor do we know upon the record before us whether counsel was even aware of those claims or had consulted his client concerning them. As close as counsel's brief comes to advocacy is the unsupported representation that "upon careful review of the docket and transcript, [he] concludes that the trial court committed no error prejudicial to the defendant." In short, we are wholly unable to find that court-appointed counsel for Freels did more than or indeed even as much as was done by court-appointed counsel in *Anders.* In *Anders* it at least appeals that appointed counsel represented to the appellate court that he had visited and explained his views and opinions to Mr. Anders and subsequently notified the court of appeals that Anders wished to file a brief on his own behalf. *Anders,* 386 U.S. at 739, 87 S.Ct. at 1397. Even this amount of effort was found insufficient to fulfill the constitutional mandate in *Anders,* for the Court there emphasized that counsel's bare no-merit conclusion was not an adequate substitute for the petitioner's right to full appellate review. As the Court specifically held:

> Hence California's procedure did not furnish petitioner with counsel acting in the role of an advocate nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity. The necessity for counsel so acting is highlighted by the possible disadvantage the petitioner suffered here. In his *pro se* brief, which was filed in 1959, he urged several trial errors but failed to raise the point that both the judge and the prosecutor had commented to the jury regarding petitioner's failure to testify.

*Id.* at 743, 87 S.Ct. at 1399–1400.

■ In reviewing Freels' petition for a writ of habeas corpus, however, the district

court applied the *Strickland* deficient counsel standard and concluded that although Freels' counsel may have violated certain *Anders* requirements, no prejudice or injury to Freels resulted and thus any error was harmless. Based on the district court opinion and a similar argument presented by the government before us on appeal, we are left to consider whether the deficient counsel standard set forth in *Strickland* can be applied to excuse the failure of court-appointed counsel to comply with the more specific commands of *Anders*. While we do not dismiss the possibility that some form of non-compliance, merely technical in nature, might be overlooked if it could be said that there was substantial although not exact compliance, we certainly cannot find that element here.

Normally, we believe that the obligation of advocacy required of counsel by *Anders* is of such a quality that it is not subject to waiver or excuse. However competent court-appointed counsel might be generally,[4] and however reasonable our court or the state court might find his conclusion that the record was devoid of error, such a finding is not an adequate substitute for the procedures which *Anders* prescribes to be followed in such circumstances. This includes a specific determination by appellate counsel that the record is devoid of error and that the issues suggested by his client are frivolous, although the question of frivolity will ultimately be decided by the state appellate court. Further, in connection with such a finding, *Anders* requires that counsel file a brief referring to anything in the record arguably supporting defendant's appeal, furnish a copy of this brief to the indigent, and thereafter seek to be relieved of his duties. This would allow the state appeals court, if it disagrees, to provide for a substitution of counsel who would fairly represent defendant and who might be more sympathetic to the issues raised by him. On the other hand, if the court agrees with defense counsel, it may forego such appointment and substitute in its place its own careful review of the record, in light of the issues pointed out by

the defendant or by the counsel seeking to withdraw. Appellate counsel here did not seek to withdraw but instead simply filed a no-merit letter, which was purportedly in compliance with an unreported decision of the Ohio Court of Appeals. *State v. Childress*, No. C–76503, slip op. (1st App.Dist. Ohio Nov. 23, 1977).

In short, it is evident that there has been a substantial non-compliance with *Anders* in nearly all respects. We need not therefore concern ourselves further, under facts not present here, whether some mere technical deficiency might safely be ignored.

■ Neither state appellate counsel nor the Ohio Court of Appeals made any reference to *Anders* in the direct appeal from Freels' plea of no contest. It is our observation that Freels' case is unfortunately not unique and that the advantages and requirements of *Anders*, although straightforward, are often ignored. We do not doubt that this may simply be due to an unawareness of *Anders*, and the absence of any reference to the case by Freels' counsel or the state appellate court, leads us to believe that this may have been the explanation here. A more common explanation, perhaps, is that court-appointed counsel, although aware of *Anders*, simply concludes that it is easier and safer not to seek withdrawal from a case but instead to file a brief advancing grounds for appeal which counsel may privately feel are totally unwarranted and frivolous. Where this occurs, it is altogether likely that counsel, weighing the unpleasant alternatives, would rather risk judicial rebuke for raising issues which are not honestly debatable than risk the alternative and more costly danger that in failing to do so, he or she may become liable to a suit for malpractice or for obloquy resulting from a charge of incompetence. The choice is both difficult and real, we recognize, but it is also true that very often what may seem frivolous or unsupportable to counsel may seem otherwise in the eyes of the client or the appellate court. Thus, we commend a continued

---

**4.** See our court's decisions in *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974), and *United States v. Goodwin*, 531 F.2d 347 (6th Cir.1976).

compliance with the requirements of *Anders* where appellate counsel concludes that he cannot fairly serve as advocate for his client. Similarly, we believe that appellate courts have a duty to recognize not only the dilemma faced by counsel, but also their own responsibility to insure that indigents are adequately represented, a right which is guaranteed by *Anders*.

The government nevertheless urges us to consider the facts specific to Freels' case: "The brevity of the record ... and the lack of any errors in the plea hearing apparent to appellate counsel, the State Court of Appeals or the Court below, brings into question the strict application of *Anders* here." Although it might be easy for us to conclude that, faced with a very abbreviated and uncontroverted record, both Freels' counsel and the Ohio Court of Appeals committed no error,[5] we believe that the absence of any evidence of advocacy in the role of appellate counsel presumptively places such a conclusion in serious doubt and vindicates the wisdom of *Anders*. We recognize that even the terms "harmless beyond a reasonable doubt," not "honestly debatable under law," and "frivolous" can be viewed in many different ways. In each circumstance, however, the mere definition of the terms requires that no substantial and viable issues be apparent on an appellate review of the record. If we were to allow the absence of viable issues on appeal to serve as an excuse for counsel's failure to follow the mandates of *Anders*, we would be effectively erasing *Anders* from the books altogether.

In holding that petitioner was denied the right to effective assistance of appellate counsel as defined in *Anders* we do not infer that there was in fact any error in the plea taking procedures themselves. It is therefore not necessary to vacate the plea or to accord Freels the opportunity to withdraw it. The constitutional violation at issue here occurred on appeal of the plea, after it was taken, and thus affects only the guaranteed right to counsel on appeal. The remedy therefore is confined to guaranteeing Freels that which he has been denied. Accordingly, the judgment of the district court is REVERSED and the cause is REMANDED with instructions to issue a conditional writ of habeas corpus unless the petitioner shall be accorded, within a reasonable time, the right to counsel, court-appointed if petitioner is then indigent. Counsel is thereafter empowered either to perfect an appeal or, if his independent examination of the record so indicates, to follow the procedures specifically mandated by *Anders*.

---

**5.** But we note that in its per curiam determining that the record contained no demonstrative error or error prejudicial to the appellant's rights, the court of appeals nonetheless "being of the opinion that there were reasonable grounds for this appeal, allowed no penalty." *State v. Freels*, No. C–830585, slip op. (1st App.Dist. Ohio April 4, 1984) [available on WESTLAW, 1984 WL 6833].