**Jeffrey Wayne DUNCAN**

v.

**UNITED STATES of America.**

**Crim. A. Nos. 3–91–00122, 3–93–0092.**

U.S. District Court,
M.D. Tennessee,
Nashville Division.

Nov. 24, 1993.

Gregory Dale Smith, Clarksville, TN, for plaintiff.

Mercedes C. Maynor–Faulcon, Asst. U.S. Atty., Nashville, TN, for defendant.

*MEMORANDUM*

HIGGINS, District Judge.

The Court has before it the motion (filed February 2, 1993; Docket Entry 1) of Mr. Duncan to set aside and correct the sentence imposed for his violation of supervised release, pursuant to 28 U.S.C. § 2255; Mr. Duncan's memorandum (filed February 2, 1993; Docket Entry No. 2) in support of his motion; and the government's response (filed March 4, 1993; Docket Entry No. 4) in opposition to the motion. The motion is properly before this Court as the court which imposed sentence on Mr. Duncan.

The Court has examined the motion and the entire record in this case, including the evidence presented during the evidentiary hearing held on September 27, 1993. For the reasons set forth below, the Court finds that Mr. Duncan was not deprived of effective assistance of counsel. Therefore, Mr. Duncan's motion for relief pursuant to 28 U.S.C. § 2255 shall be denied.

I.

Mr. Duncan was convicted of possession and distribution of cocaine in the Western District of Kentucky, and on December 11, 1989, he was sentenced to twenty-one months in prison. *See* judgment (filed July 9, 1991; Docket Entry No. 4). This sentence was to be followed by three years of supervised release. He began serving his term of supervised release in December of 1990. The

United States District Court for the Western District of Kentucky subsequently transferred jurisdiction of Mr. Duncan to the United States District Court for the Middle District of Tennessee, pursuant to 18 U.S.C. § 3605. Order (entered June 21, 1991; Docket Entry No. 1).

On September 3, 1991, a warrant (entered September 4, 1991; Docket Entry No. 7) was issued for Mr. Duncan to show cause why his supervised release should not be revoked. The warrant alleged violation of his supervised release as evidenced by the results of five drug screenings, which tested positive for cocaine. Mr. Duncan's initial hearing was held before the Magistrate Judge on September 9, 1991, and following a detention hearing on September 10, 1991, Mr. Duncan was sent to Buffalo Valley, a drug and alcohol rehabilitation center. On May 21, 1992, Mr. Duncan was found guilty of violating supervised release as a result of his possession of a controlled substance, in violation of 18 U.S.C. § 3583(g), and the Court imposed a sentence of twenty-four months' imprisonment. Judgment (entered May 28, 1992; Docket Entry No. 39).

Mr. Duncan filed a *pro se* request for an out-of-time appeal on June 25, 1992 (Docket Entry No. 40), which was denied by both this Court (order entered July 24, 1992; Docket Entry No. 43) and the United States Court of Appeals for the Sixth Circuit. He filed the motion now before the Court on February 2, 1993, seeking to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. Mr. Duncan argues that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. More specifically, he alleges that his counsel, Mr. C. Douglas Thorsen of the Federal Public Defender's office, failed to file a timely notice of appeal to challenge the length and conditions of his sentence under 18 U.S.C. § 3583(g), despite Mr. Duncan's request that such an appeal be filed. Mr. Thorsen denies this allegation.

As noted by the United States Court of Appeals for the Sixth Circuit, an individual's "right to appeal and to counsel at appeal are personal rights of Constitutional dimension." *Boyd v. Cowan,* 519 F.2d 182, 184 (6th Cir.

1975). The Supreme Court has held that waiver of such important rights must be done intelligently and understandingly. *Carnley v. Cochran,* 369 U.S. 506, 515, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77 (1962). In *Carnley,* the Court reiterated the standard of proof concerning waiver of fundamental rights: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" *Id.* at 514, 82 S.Ct. at 889, 8 L.Ed.2d at 76 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1566 (1938)). Accordingly, "[p]resuming waiver from a silent record is impermissible." *Carnley,* 369 U.S. at 516, 82 S.Ct. at 890, 8 L.Ed.2d at 77. *See also Boyd,* 519 F.2d at 184, (relinquishment of rights cannot occur "upon a silent record"); *United States v. Rife,* 514 F.Supp. 368, 377 (S.D.Ohio 1981) (no presumption of regularity for issue of intelligent and understanding waiver of right to counsel).

An evidentiary hearing in this action was therefore deemed necessary since examination of the record revealed the existence of a significant question of fact, namely, whether or not Mr. Duncan requested that his counsel make a timely appeal of the sentence imposed on May 21, 1992. Mr. Duncan alleges that he explicitly requested that his counsel appeal his sentence, while Mr. Thorsen denies this allegation and, in fact, contends that Mr. Duncan specifically told him not to appeal immediately after the sentencing. Mr. Duncan does not claim that he instructed Mr. Thorsen to appeal at the time of sentencing, but instead relies upon subsequent communications with Mr. Thorsen and his office to establish his request to appeal. Counsel was appointed for Mr. Duncan and an evidentiary hearing on the ineffectiveness of counsel issue was held on September 27, 1993.

II.

To prevail on his ineffective assistance of counsel claim, Mr. Duncan has the burden of proving not only his attorney's deficient performance, but also that such performance prejudiced the final result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct.

2052, 2064, 80 L.Ed.2d 674, 693 (1984). Unless Mr. Duncan presents evidence fulfilling both prongs of this test, it cannot be said that his sentence "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

Establishing the deficiency of counsel's performance requires evidence showing that the attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The inquiry for the reviewing court is "whether counsel's assistance was reasonable considering all the circumstances," *id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694, and judicial scrutiny of the attorney's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Because of this strong presumption that counsel has provided reasonable professional assistance, the burden of proof in establishing incompetent performance is a heavy one. *Id. See also Riley v. Wyrick,* 712 F.2d 382, 385 (6th Cir.1983) ("Counsel is presumed effective, and the exercise of reasonable judgment—even if later proven unwise—does not constitute ineffective assistance").

The prejudice component requires proof "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The requirement of prejudice for an ineffectiveness of counsel claim is necessary in light of the purpose underlying the Sixth Amendment's guarantee of counsel, which the Supreme Court has described as being "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 691–92, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. The Supreme Court clarified the applicable burden of proof as one which demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

In summary, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process" that a just result cannot be assured. *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. This standard is applicable to federal collateral proceedings, as well as to direct appeals and motions for a new trial. *Id.* at 697, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. The Court specifically noted the applicability of this standard to an ineffectiveness of counsel claim made in a habeas proceeding, since such a claim "is an attack on the fundamental fairness of the proceedings whose result is challenged." *Id.* Because Mr. Duncan has failed to prove, by a preponderance of the evidence, his attorney's deficient performance, his motion must be denied.

### III.

#### A. *Attorney Incompetence*

■ Generally, determination of whether an attorney's performance in a particular situation was deficient entails a combined question of law and fact, *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700, since attorney errors can be so varied and have such diverse outcomes. However, in this instance, the attorney error alleged is limited to Mr. Thorsen's failure to appeal Mr. Duncan's sentence, despite his instructions to do so.

If proven, such inaction comprises a breach of an attorney's basic duty of loyalty, which certainly deviates from the "objective standard of reasonableness" required. *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. As noted by the Supreme Court, the fair process constitutionally guaranteed each individual "can only be attained where counsel acts in the role of an active advocate in behalf of his client." *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967). This role of advocate requires that the attorney "support his client's appeal to the best of his ability." *Id.* Blatantly ignoring a client's directive to appeal an imposed sentence obviously contradicts this mandate.[1]

---

1. Even if examination of the case reveals that an appeal would be frivolous, such inaction violates

the advocacy required of counsel. In such cases, the Supreme Court specifically requires that

In addition, one could hardly argue that failing to perfect an appeal, despite a client's express directive to the contrary, could be the result of an attorney's reasonable judgment under the circumstances, *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694, or that it could reflect even unwise trial strategy. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. Therefore, an attorney's failure to comply with a client's directive to appeal, if proven, would fulfill the performance prong of the *Strickland* test.[2] Accordingly, determination of the attorney incompetence prong of the *Strickland* test in this action requires resolution of the factual dispute surrounding whether or not Mr. Duncan requested an appeal of his sentence and Mr. Thorsen ignored this request.

At the evidentiary hearing, Mr. Duncan testified that, after his sentencing, he indicated his desire that his sentence be appealed in four different conversations with individuals in the Federal Public Defender's office. He further contended that at least three of these conversations occurred within one week to ten days after his sentencing. The evidence presented at trial, however, suggests that this recollection of events is inaccurate.

For example, Mr. Duncan stated that his first contact with the Federal Public Defender's office comprised a telephone conversation with Ms. Mariah Wooten, at which time he specifically advised her that he had been trying to get in touch with Mr. Thorsen and that he wanted to appeal his sentence. Ms. Wooten testified that she vaguely recalls receiving a telephone call from Mr. Duncan in June of 1992, but cannot remember the precise date nor how she came to talk with him. Although she verified that he was seeking information, she was unable to remember any specific questions or requests submitted by Mr. Duncan. She did state, however, that

had Mr. Duncan requested the filing of an appeal, she would have promptly advised his designated attorney due to the time parameters involved. Ms. Wooten did not recall advising Mr. Thorsen of such a request, nor was there any other evidence presented indicating such a message was conveyed to him by Ms. Wooten.

Likewise, there is uncertainty surrounding Mr. Duncan's assertions that he specifically conveyed his desire to appeal during a second telephone conversation with a staff member. Mr. Duncan testified that during his second telephone contact with the Federal Public Defender's office, he spoke with a woman he presumed to be the secretary, who took a message from him to give to Mr. Thorsen. He contends that he advised her of three legal matters which he needed to discuss with Mr. Thorsen, namely, jail credit, appealing his sentence, and consideration of policy statements in imposing a prison sentence.

However, the handwritten note from Ann Carr, *see* defendant's exhibit 1, the office staff person with whom Mr. Duncan spoke, fails to corroborate the message he claims was left for Mr. Thorsen. Examination of the note reveals documentation of three items of concern which were apparently conveyed to Ms. Carr: (1) motion for good time; (2) jail credit; and (3) desire to file "2255 and IFP." Under item number three, there are two additional notations which read as follows: "1. Enhancement after being acq on firearm" and "2. Double Jeopardy." At the bottom of the handwritten note are printed, in large capital letters, the words "PLEASE RESPOND."

It is noteworthy that nowhere on this message to Mr. Thorsen, which was probably drafted contemporaneously with the tele-

---

counsel so advise the court and request permission to withdraw. *Anders,* 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. This request must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.*

2. Such an interpretation corresponds with the observation of the United States Court of Appeals for the Sixth Circuit that "courts have found that a defendant has been denied effective assistance

of counsel when the malfeasance or nonfeasance of his or her counsel effectively deprived the defendant of the right to appeal." *Riley,* 712 F.2d at 386. In *Riley,* the Sixth Circuit specifically noted that, as in cases where counsel failed to file or perfect an appeal, the attorney's misguided trial strategy effectively deprived the client of the right to appeal, a result which the Court found strengthened its finding of prejudice. *Id.*

phone conversation or shortly thereafter, does the word "appeal" appear. It is unlikely that a staff person would fail to include a client's request for an appeal in a written telephone message to a staff attorney, particularly since such a legal matter necessarily includes rather stringent time parameters.

In addition, there is no indication of when this telephone message was left for Mr. Thorsen. It is unfortunate that Ann Carr's handwritten message fails to include the date and time of receipt, since such information would have been invaluable to the Court in its evaluation of all the evidence. The message does not even state to whom it is addressed. Mr. Thorsen testified that this message was left for him by Ms. Carr, although he was unable to recall the precise date. He stated that he responded to Mr. Duncan's message around June 5, 1992, which he believed was approximately two days after his receipt of the message. There is in evidence a handwritten worksheet concerning a motion for credit for time served, as well as a typed draft of this motion, which Mr. Thorsen states resulted from the telephone message he received from Ms. Carr. *See* defendant's exhibit 4. Unfortunately, neither of these documents contain a date which would help to clarify the time frame within which these events occurred.

Thus, while a timely written message for Mr. Thorsen which specifically articulated Mr. Duncan's request to appeal his sentence could be construed as constructive notice, with the failure to respond possibly suggesting attorney incompetence, such evidence is not before the Court. Although it is possible that this message was received by Ann Carr and transmitted to Mr. Thorsen within ten days of Mr. Duncan's sentencing, based upon Mr. Thorsen's recollection that he responded approximately two days later, there is no corroboration that a request to appeal the sentence was specifically included in this particular telephone conversation.

Similarly, Mr. Duncan's allegations concerning his direct communications with Mr. Thorsen are in dispute. Mr. Duncan denied telling Mr. Thorsen that he did not want an appeal on May 21, 1992, and further testified that, after his sentencing, he had two telephone conversations with Mr. Thorsen. He claims that the first conversation occurred within one week to ten days after his sentencing, and included his specific request that his sentence be appealed. Mr. Duncan stated that during the second conversation, he asked Mr. Thorsen how to proceed with a 2255 motion concerning his original conviction in Kentucky, as well as how to obtain jail credit.

Mr. Thorsen's version of the events directly contradicts Mr. Duncan's description of what occurred. Mr. Thorsen testified that Mr. Duncan specifically told him that he wanted no appeal on May 21, 1992, the day of his sentencing,[3] and that he received no further communication from Mr. Duncan within ten days of the sentencing. In contrast to Mr. Duncan's allegations, Mr. Thorsen testified that his first direct telephone conversation with Mr. Duncan involved a 2255 motion and occurred more than ten days after the sentencing. He stated that this conversation occurred after he had responded to the message left by Ms. Carr, and he had advised Mr. Duncan that the 2255 motion they were discussing would have to be done pro se.

Furthermore, Mr. Thorsen testified that it was during a subsequent telephone conversation with Mr. Duncan, occurring somewhere around June 16, 1992, that the plaintiff first indicated that he wanted his sentence appealed. He stated that Mr. Duncan said words to the effect of "Why didn't you appeal my case?" Mr. Thorsen described the plaintiff as "angry" and "blaming" during this telephone conversation, and documented his observations in a nearly illegible[4] and cryptic

---

3. Mr. Thorsen testified that he spoke with Mr. Duncan in the Marshal's lockup after his sentencing, at which time he advised the plaintiff of his right of appeal. He stated that Mr. Duncan had discussed the fact that the sentence imposed was within the appropriate range and that he saw no basis for appeal, and Mr. Thorsen had agreed with this assessment.

4. Mr. Thorsen was unable to decipher some of his own handwriting when asked by the Court to read his notes, which constitute defendant's exhibit 2, into the record.

handwritten "memo to file," *see* defendant's exhibit 2, as well as in a brief dictated memorandum. *See* defendant's exhibit 3.

The handwritten memo, although undated, indicates that Mr. Thorsen "[r]eceived telephone call at 4:40 p.m. from Jeff Duncan on June 13, 1992; advised he wanted to appeal...."[5] Mr. Thorsen testified that he had drafted a letter to Mr. Duncan concerning some of the research he had conducted pursuant to the message conveyed through Ms. Carr, but is uncertain whether this letter was ever sent.[6] There is, unfortunately, no copy of a signed letter sent to Mr. Duncan in Mr. Thorsen's files which could verify whether this letter was ever sent.

Mr. Thorsen's typed memorandum, defendant's exhibit 3, which is the only legible document memorializing this telephone conversation, likewise provides few insights which serve to clarify the situation. Although apparently dictated in response to Mr. Duncan's telephone call, the memo itself does not even mention the angry telephone call it is purportedly documenting, and fails to include the date Mr. Thorsen received the call. The memo, dated June 16, 1992, reads as follows: "Jeffrey Duncan claims that he called the office and said that he wanted to appeal a case. The telephone message I received addressed getting credit for time served and some 2255 motion. I responded with a letter regarding the 2255 motion."

Nor does the testimony of Mr. Larry Rogers provide any further insights. Mr. Rogers testified that he assisted Mr. Duncan in contacting Mr. Thorsen and others by providing three-way telephone calls while Mr. Duncan was incarcerated. Although he acknowledged that he did not always stay on the line and listen to the resulting conversation, Mr. Rogers testified that he specifically remembers listening to one conversation during which Mr. Duncan explicitly told Mr. Thorsen that he wanted an appeal. He described Mr. Duncan as having talked about an appeal "very strongly" during this conversation. However, he is unable to recall when this conversation took place, and admitted it could have occurred anywhere from one to three weeks after Mr. Duncan was incarcerated. Mr. Rogers explained that, because he does not save his telephone bills, he was unable to use them to refresh his recollection concerning a more specific date, nor provide them to the Court for its consideration.

Thus, the preponderance of the evidence fails to support Mr. Duncan's allegations and, instead, strengthens Mr. Thorsen's description of events. The handwritten message to Mr. Thorsen, taken by Ms. Carr at the time of Mr. Duncan's call, documents the specific legal matters Mr. Duncan wanted brought to Mr. Thorsen's attention. Although an appeal is not mentioned in this message, the two items Mr. Thorsen recalls attending to are included, namely, jail credit and a 2255 motion. Mr. Thorsen's handwritten notes and the resulting draft of a motion for credit for time served corroborate the existence of this request. Mr. Duncan's testimony corroborates the existence of his request for information on a 2255 motion, although he stated that he discussed this issue with Mr. Thorsen during his last telephone call.

Several other aspects of Mr. Duncan's testimony call his credibility into question. For example, when questioned about what topics were discussed during his second telephone conversation with Mr. Thorsen, Mr. Duncan stated that he asked Mr. Thorsen about a 2255 motion concerning his original conviction in Kentucky and jail credit. It is surprising that Mr. Duncan did not ask Mr. Thorsen about the status of his appeal during this discussion, in light of his prior testimony that he had specifically requested an appeal of his sentence during their previous telephone conversation.

---

**5.** It appears that another digit, perhaps a "5", was written over the "3" in the number 13 on the first page of this document.

**6.** This testimony, in conjunction with the substance of the memo to file, suggests that, at some point after Mr. Thorsen sent Mr. Duncan a letter concerning the results of his legal research, Mr. Duncan telephoned Mr. Thorsen and expressed anger because Mr. Thorsen had not filed an appeal of his sentence. Needless to say, the lack of documentation and the absence of relevant and specific dates on the available documents introduce unnecessary obstacles in the Court's search for the truth.

Also, Mr. Duncan's testimony that he filed for an out-of-time appeal two days after he found out that Mr. Thorsen had not filed an appeal lends support for Mr. Thorsen's description of events. Mr. Thorsen testified that the telephone conversation during which Mr. Duncan first asserted that he had requested an appeal occurred around June 16, 1992. The court documents indicate that the petition for an out-of-time appeal was signed by Mr. Duncan on June 19, 1992, and was received by the Clerk's office on June 25, 1992.

## B. *Prejudice*

■ Although reaching the prejudice component of the *Strickland* test is not required in this action since deficient attorney performance has not been proven, the Court would note that an attorney's breach of the duty of loyalty[7] does not serve to ensure that the client has been provided "the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. In addition, it cannot be disputed that an attorney's failure to perfect an appeal, despite his client's direction to do so, has serious ramifications which negatively impact the fundamental fairness of the overall proceedings.

Furthermore, as is the case with conflict of interest claims, this particular attorney error is not as likely to be harmless in its result as prejudicial, and can be precisely defined so as to inform defense attorneys of the specific conduct to be avoided. *Id.* at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. These characteristics distinguish both conflict of interest and failure to appeal claims from other deficient performance claims. Thus, it would appear that a claim based on the failure to perfect a requested appeal, if proven, warrants a legal presumption of prejudice, similar to that

found in other Sixth Amendment contexts, namely, cases involving actual or constructive denial of counsel or conflict of interest. *Id.* at 691, 104 S.Ct. at 2067, 80 L.Ed.2d at 696.

This interpretation corresponds with the Supreme Court's assertion that "[t]hose whose right to appeal has been frustrated should be treated exactly like any other appellant; he should not be given an additional hurdle to clear just because the rights were violated at some earlier stage in the proceedings." *Rodriguez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340, 344 (1969). It is noteworthy that the Supreme Court has approvingly referred to the presumption of prejudice recognized by two courts[8] in cases where a substantial showing has been made that the right to effective assistance of counsel has been denied. *Lozada v. Deeds,* 498 U.S. 430, 432, 111 S.Ct. 860, 862, 112 L.Ed.2d 956, 961 (1991). *See also Bonneau v. United States,* 961 F.2d 17, 23 (1st Cir.1992) (defendant not required to show meritorious issues to be appealed when denied right to appeal due to ineffective counsel); *Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir.1990) (when counsel has rendered ineffective assistance by failing to properly perfect appeal, merits of arguments to be made on appeal are not considered); *Estes v. United States,* 883 F.2d 645 (8th Cir.1989) (deficient attorney performance in perfecting appeal is prejudicial under *Strickland* standard); *United States v. Winterhalder,* 724 F.2d 109, 112 (10th Cir.1983) (right to effective counsel denied as result of counsel's failure to follow through with appeal).

Finally, as mentioned previously, the Supreme Court has delineated the requirements[9] to be followed should an attorney's examination of a case reveal that client advo-

---

7. This particular attorney error is obviously distinguishable from the situation in which the attorney makes an informed professional judgment that an appeal of the sentence imposed would not be wise or successful. The latter instance, in which the attorney would have discussed available alternatives with the client and obtained the client's consent concerning the ultimate decision, would not entail any breach of the duty of loyalty. Rather, the usual inquiry would apply since the considerations of varying "reasonableness" and outcomes are again involved. Accordingly,

the presumption of reasonable professional assistance would be invoked in such cases.

8. The Supreme Court referred to *Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir.1990), and *Estes v. United States,* 883 F.2d 645, 649 (8th Cir.1989).

9. Counsel is required to advise the court that an appeal would be frivolous and request permission to withdraw. A brief which makes reference to all potential arguments in support of an appeal must accompany the request to withdraw.

cacy is impossible due to the perceived frivolity of an appeal. *Anders,* 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. An attorney's failure to perfect a requested appeal, without seeking to withdraw from the case and filing the required documents, would obviously comprise non-compliance with the mandate of *Anders.*

The Sixth Circuit has held that such non-compliance denied the effective assistance of appellate counsel, despite the absence of demonstrative error prejudicial to the appellant's rights. *Freels v. Hills,* 843 F.2d 958, 964 (6th Cir.), *cert. denied,* 488 U.S. 997, 109 S.Ct. 567, 102 L.Ed.2d 591 (1988). In *Freels,* the Court held the defendant was entitled to have appellate counsel perfect an appeal and advocate his position or follow the mandated *Anders* procedures. *Id.* at 962–63. In its decision, the Court noted that "[i]f we were to allow the absence of viable issues on appeal to serve as an excuse for counsel's failure to follow the mandates of *Anders,* we would be effectively erasing *Anders* from the books altogether." *Id.* at 964. The Court reiterated this principle in a later case by stating that "appellate counsel's failure to meet the requirements of *Anders v. California,* is presumptively prejudicial and, therefore, need not be measured by the standards announced in *Strickland v. Washington.*" *Allen v. United States,* 938 F.2d 664, 666 (6th Cir.1991) (citations omitted).

## IV.

After reviewing all of the available evidence, the Court finds that Mr. Duncan has not fulfilled his burden of proving that Mr. Thorsen ignored his directive to file an appeal of his sentence, thereby establishing attorney incompetence. Indeed, the available evidence documenting the communications between Mr. Duncan and Mr. Thorsen, albeit sketchy and sparse, fails to corroborate Mr. Duncan's contention that he ever directed Mr. Thorsen to file an appeal of his sentence and actually lends credence to Mr. Thorsen's version of the events. Because attorney incompetence has not been proven, Mr. Duncan cannot establish the ineffectiveness of counsel which would warrant setting aside his sentence.

Accordingly, the Court finds that Mr. Duncan was not deprived of his constitutionally guaranteed right to effective assistance of counsel. Mr. Duncan's motion requesting that his sentence be set aside must therefore fail.

An appropriate order shall be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the motion (filed February 2, 1993; Docket Entry 1) of the plaintiff, Jeffrey Wayne Duncan, to set aside and correct sentence pursuant to 28 U.S.C. § 2255 is denied.

It is so ORDERED.